537 So.2d 262 (1988)
Nicholas F. RIPPON, Jr.
v.
VARIABLE PROTECTION ADMINISTRATORS, INC., and Dependable Life Insurance Company.
No. 88-CA-0716.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 1988.
Rehearing Denied February 16, 1989.
Writ Denied April 14, 1989.
John M. Gallagher, Jr., New Orleans, for plaintiff.
Darryl J. Foster, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for Dependable Life Ins. Co., appellant.
Before GARRISON, BARRY and WILLIAMS, JJ.
WILLIAMS, Judge.
This appeal arises out of an action to recover penalties and attorney's fees pursuant to LSA-R.S. 22:657 for defendant hospitalization insurer's alleged arbitrary and capricious failure to timely pay plaintiff's claim.
The trial court found defendant was arbitrary and capricious in delaying payment of plaintiff's claim due to defendant's failure to properly investigate the discrepancies contained within plaintiff's medical records and claim forms which indicated plaintiff's injuries may have been excluded from coverage. Defendant, however, claims it had just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, for delaying payment of the claims so that it should not have been cast in judgment for statutory penalties of double the amount of benefits due, $19,158.18, and attorney's fees in the amount of $5,000.00. We agree; the facts do not support the trial court's finding that defendant was arbitrary and capricious in *263 delaying payment of plaintiff's claim. Therefore, the sanctions of LSA-R.S. 22:657 cannot be imposed. The judgment of the trial court awarding penalties and attorney's fees is reversed and plaintiff's request for additional attorney's fees is denied.
FACTS
Plaintiff, Nicholas Rippon, is a partner in Ruby Construction Company, a two-man firm specializing in residential renovation and restoration. Through an independent agent with Friedler, LaRocca & Associates, Ruby Construction Company applied for group major medical health insurance coverage with defendant, Dependable Life Insurance Company.[1] Ruby's December 10, 1984 coverage application, signed by plaintiff, requested coverage for its two full-time employees, plaintiff and his partner. The application and the attached enrollment form listed Ruby's business address and plaintiff's own address as 927 St. Ferdinand Street. The insurance policy subsequently obtained by Ruby excluded from coverage all work related injuries.[2]
In the early afternoon of March 23, 1985, plaintiff was seriously injured when a ceiling collapsed upon him while he was renovating a residence at 540 St. Ferdinand Street.[3] Plaintiff was immediately taken to Touro Infirmary and then to Tulane Medical Center, where he remained until April 4, 1985. Defendant was notified of the accident a few weeks later, on April 18, 1985, through an invoice from Tulane for $12,286.49.
Due to the quantum of Tulane's bill, defendant requested further information about the injury from both Tulane and plaintiff. In response, defendant received plaintiff's proof of claim form on May 13, 1985. This form declared the accident was not work related, yet it described the accident as having occurred when "during a renovation the ceiling caved in and struck me across the back." The form also indicated that plaintiff's address was 927 St. Ferdinand Street and his home telephone number was the same as his work number. This information combined with the information provided by Ruby's coverage application, that plaintiff's employment involved residential restoration, alerted defendant that plaintiff's injuries might be excluded from coverage.
Tulane's medical records, received by defendant on June 13, 1985, included the physician discharge summary which provided further notice that plaintiff had been injured when "he was working construction in a house ... in which the roof fell in upon him." But more importantly to the issue of coverage, Tulane's claim forms, signed by plaintiff and dated June 10 and April 16, 1985, both indicated that the claimant's condition was related to the patient's employment.[4]
*264 To further complicate matters, confusion also existed as to worker's compensation coverage. Form letters, dated June 24 and July 3, 1985 issued by one of defendant's claim representatives indicated that "other insurance is primary. Please submit confirmation of payment by worker's comp.". And correspondence from plaintiff to one of defendant's claim supervisors stated, "[a]though my accident was work related[5] as co-owner of Ruby construction, I am not eligible for workman's compensation ... There is no other insurance company with whom I am covered." Still yet another letter, from one of defendant's claim supervisors, harmlessly added to the confusion when it responded to the plaintiff's July 11th letter by stating that workmen's compensation coverage "is compulsory to all employees, including corporate executives and ... that corporate officer[s] who [are] 10% shareholder[s] may reject the coverage... Our policy however, requires that if you are eligible for workmen's compensation you will not be covered for any injuries incurred on the jobsite."[6]
During this same period of time, defendant denied plaintiff's claim on July 2, 1985, and notified plaintiff that the decision had been made in accordance with the terms and provisions of the insurance policy. The denial specifically referred to Section CT-14 which defined excluded charges[7] and to Section CT-25 which described the appeals procedure.[8]
Instead of appealing the denial, however, plaintiff retained a friend of his who practiced law to handle the insurance claim. Thereafter, by letter of August 1, 1985, which defendant received on August 9, 1985, plaintiff's counsel advised defendant that plaintiff was not an employee of a corporation but a partner in a partnership. The letter also maintained that plaintiff, "was not on the job when the accident occurred. He was renovating his personal residence at 540 St. Ferdinand Street when the accident occurred. Critical to the fact that the accident happened on a Saturday evening. [Sic] Mr. Rippon's business received no compensation for work done at his residence, nor did his business provide him with worker's compensation for this." (emphasis in the original) Continuing, the letter declared "[u]nder no stretch of the imagination was Mr. Rippon an `employee' under ... L.R.S. 23:1021, et seq. Even if he were an `employee', he was not acting within the scope of his employment at the time of the weekend accident at his residence." The letter closed with notification that if the claim was not honored within ten days, plaintiff would file suit under LSA-R.S. 22:657.
Defendant then referred the claim to its own counsel. And on September 4, 1985, *265 defendant's counsel sent a written request to plaintiff's counsel for a letter signed by plaintiff himself setting "forth in full an accurate detail the facts concerning his accident" so as to resolve the "factual inconsistencies which prevent[ed] favorable consideration" of plaintiff's claim.[9] Thereafter, by letter of September 10, 1985, plaintiff's counsel offered to settle the matter for $30,000.00, allowing defendant ten days to accept the offer.
Apparently no settlement was reached and on October 10, 1985, plaintiff filed suit claiming $104,000.00 in damages.[10] The following day, plaintiff executed an affidavit which declared he was injured while working on his private residence located at 540 St. Ferdinand Street and 927 St. Ferdinand Street was his business address as well as his mailing address for the purposes of receiving personal mail. Defendant received the affidavit on October 21, decided to honor the claim on October 23, and issued checks payable to Tulane Medical Center, plaintiff's physician, the ambulance service and Touro Infirmary on October 31, 1985. Thus, of plaintiff's total claim of $20,318.93, defendant paid $19,158.19.
Service on the Secretary of State on behalf of Dependable Life Insurance Company was accomplished on October 24, 1985, and the suit for attorney's fees and penalties was tried on December 7 and 8, 1987,[11] and then taken under submission. The judgment signed on December 23, 1987, awarded damages in favor of plaintiff and against defendant in the sum of $19,158.18 with legal interest from the date of judicial demand until paid and for $5,000.00 in attorney's fees. The court's reasons concluded that defendant failed to properly perform its duty to investigate and resolve the conflict between the statements in the claim forms in order to determine whether plaintiff was working within the course and scope of his employment. The trial court also observed that an insurer cannot assume or take the position most favorable to it without a proper investigation.
Defendant appeals the award and the finding that its actions were arbitrary and capricious and without just and reasonable grounds. Plaintiff answers the appeal, asserting that the only error in the court below was the court's failure to award him attorney's fees in the amount of $15,793.00. Plaintiff also requests damages and attorney's fees pursuant to LSA-C.C.P. art. 2133, for defendant having brought this appeal. After a thorough review of the record, we reverse the judgment of the trial court because the record does not support the finding that defendant's actions were arbitrary and capricious. Consequently, the sanctions of LSA-R.S. 22:657 can not be imposed.
STATUTORY PENALTIES AND ATTORNEY'S FEES
Defendant contends manifest error occurred when it was assessed with penalties *266 and attorney's fees, pursuant to LSA-R.S. 22:657[12], after the court determined the delayed payments were attributable to defendant's failure to properly investigate the discrepancies in the plaintiff's medical records and claim forms. Defendant maintains that facts existed, such as would put a reasonable and prudent businessman on his guard, which support its delay in paying the claim and that its good faith investigation was continuous and not dilatory.
As plaintiff's insurance application indicates the insured partnership is a residential renovation construction company, defendant asserts it was put on guard that a work related accident, an excluded claim, might have occurred when Tulane Medical records showed plaintiff was injured while working construction in a house. Defendant's doubt increased when it received claim forms which also indicated the injuries were work related. Additional confusion occurred from plaintiff providing 927 St. Ferdinand Street as his business address instead of 540 St. Ferdinand Street.
Defendant also asserts that its decision to deny the claim, made July 2, 1988, was announced prior to the date plaintiff wrote the July 11th letter admitting his injuries were work related. Nevertheless, even after the decision was issued, defendant claims it continued its good faith investigation by requesting a letter signed by plaintiff, setting forth the facts of the accident establishing it was not work related. Instead of immediately receiving a reply, the first detailed written document received from plaintiff himself, unequivocally stating the accident was not work related, was the affidavit of October 11, 1985. A document written five weeks after it was requested and the day after suit was filed. Once this writing was received, however, the claims were paid within two weeks.
To counter these arguments, plaintiff asserts defendant's confusion about the factual circumstances of the accident is pretextual. He argues that if a thorough and timely investigation of the claim had been conducted, defendant could have gathered documentary proof that he owned 540 St. Ferdinand Street; the injuries occurred on a weekend during non-business hours; and Ruby Construction received no renumeration for the work he did on the date of the accident. If this investigation had been done, defendant would have realized it lacked a sound basis for denying and/or delaying payment of the claim.
Plaintiff also claims that in March, 1985 he told the independent agent who had placed Ruby's coverage with Dependable that he had been injured in his home. At trial this agent testified that when she telephoned defendant in late July, she was "almost certain" she told defendant's claim supervisor the accident occurred on a Saturday while plaintiff was working in his home for which he received no compensation. Moreover, all details which establish that the accident was not work related, were set forth in his attorney's letter dated August 1, 1985. Despite that letter's clarification of all facts, the claim remained unpaid.
Under LSA-R.S. 22:657, whenever a claim is properly presented under a health and accident policy, it must be paid within thirty days, unless just and reasonable grounds exist, such as would put a reasonable and prudent businessman on his guard that the claim is unjust. Cheramie v. Bd. of Trustees, 482 So.2d 742, 747 (La.App. 1st Cir.1985), writ den., 486 So.2d 734 (La. 1986). *267 The statute implies that the insurer is entitled to refuse or delay payment, if such just and reasonable grounds for refusing or delaying payment exist. See Thompson v. Business Ins. Life of America, 413 So.2d 331, 336 (La.App. 3d Cir. 1982). The issue of whether just and reasonable grounds exist, is a question of fact, Poche v. Louisiana Health Service & Indemnity Co., 391 So.2d 17 (La.App. 3d Cir.1980), writ den., 396 So.2d 885 (La. 1981); Benintende v. First Protection Life Ins. Co., 452 So.2d 258, 260 (La.App. 5th Cir.1984); Perkins v. United American Ins. Co., 505 So.2d 206, 211 (La.App. 3d Cir. 1987), Thompson v. Business Ins. Life of America, 413 So.2d at 336, with each case being decided on its own facts and circumstances, Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3d Cir.1980); Benintende v. First Protection Life Ins. Co. 452 So.2d 258 (La.App. 5th Cir.1984). Thereafter, the factual determinations of the trial judge will not be disturbed on appeal unless clearly wrong. Lucito v. Louisiana Hospital Service, Inc., 392 So.2d at 703; Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584, 589 (La.App. 1st Cir.1984).
Nevertheless, the trial court's flexibility to award the statutory penalties is tempered by the nature of the statute itself. Jurisprudence has strictly construed the provision, mandating that its penalties should not be imposed unless the insurer's refusal to pay is clearly an arbitrary and capricious act. Posey v. Board of Trustees, State Employees Group Benefits Program, 426 So.2d 705, 708 (La.App. 1st Cir. 1983), writ den., 429 So.2d 139 (La.1983) [the provisions of LSA-R.S. 22:657 "may not be imposed unless the refusal to pay is clearly arbitrary and capricious"]; Breland v. Louisiana Hospital Services, Inc., 468 So.2d 1215, 1222 (La.App. 1st Cir.1984) [LSA-R.S. 22:657(A) "is penal in nature and must be strictly construed. Its sanctions may not be imposed unless the refusal to pay is clearly arbitrary and capricious"]; Gleason v. Banker's Life & Casualty Co., 147 So.2d 86, 89 (La.App. 2d Cir. 1962) [LSA-R.S. 22:657 "is penal in nature and should not be inflicted unless the action of the insurance company in refusing to pay was clearly arbitrary and capricious"]; Colville v. Equitable Life Assur. Soc., 514 So.2d 678, 682 (La.App. 2d Cir. 1987) ["The penalties [of LSA-R.S. 22:657] should not be applied unless the refusal to pay is clearly arbitrary and capricious."] Consequently, as our review of the record affirmatively shows that defendant's actions were not arbitrary and capricious, the trial court erred in casting defendant with penalties and attorneys fees.
The questions raised by the information provided in the medical records, insurance application and insurance claim forms plainly indicated plaintiff's injuries might be excluded from coverage for being work related. Consequently, defendant had just and reasonable grounds to refuse or delay paying the claim until it realized its position was unjustified. During that time period, defendant had an affirmative duty to verify, through a reasonable investigation, whether the claim was actually excluded from coverage. See Perkins v. United American Ins. Co., 505 So.2d 206 (La.App. 3d Cir.1987). Defendant was impliedly authorized to hold the claim in abeyance until the investigation was complete. See Fabacher v. Coastal States Life Ins. Co., 253 La. 852, 220 So.2d 99 (1969).
The initial claim denial was not based upon a solitary statement or form, but upon a number of documents received from both plaintiff and Tulane Medical Center. After denying the claim on July 2, 1985, defendant continued its attempt to verify whether plaintiff's claim was work related. At trial, defendant's agent testified the claims personnel were wary because conversations with plaintiff indicated that he may have "changed his story" about the accident being work related. Once it received plaintiff counsel's letter of August 1, which contained information sufficient to put defendant on notice that its initial refusal to pay the claim was unjustified, defendant was entitled to request a verification letter from plaintiff himself, setting forth the facts of his accident. Upon receipt of the requested writing, the claim was immediately paid.
Based upon these facts, we find the record amply demonstrates that defendant was not arbitrary and capricious in delaying *268 payment of the claim. Pinder v. Old Southern Life Ins. Co., 490 So.2d 821 (La. App. 3d Cir.1986) [insurer acted arbitrarily and capriciously when it continued to deny plaintiff's claim, without further investigation, after it received information which put it on notice that its position in refusing plaintiff's claim might have been unjustified]; Benintende v. First Protection Life Ins. Co., 452 So.2d 258 (La.App. 5th Cir. 1984) [while insurer might have initially had reasons which justified its refusal to pay plaintiff's claim, insurer's continuous failure to honor plaintiff's policy for five years, without verifying its exclusionary defense, was arbitrary and capricious]. Therefore, the provisions of LSA-R.S. 22:657 may not be imposed and the trial court's award of penalties is reversed, Posey v. Board of Trustees, State Employees Group Benefits Program, 426 So.2d 705 (La.App. 1st Cir.1982), writ den., 429 So.2d 139 (La. 1983) [penalties under LSA-R.S. 22:657 may not be imposed unless the insurers refusal to pay is clearly arbitrary and capricious], as is the award of attorney's fees, Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3d Cir.1980) [attorney's fees under LSA-R.S. 22:657 may only be assessed when grounds exist to award penalties].
For the reasons assigned, the judgment of the trial court is reversed, costs to be paid by the respective parties.
REVERSED.
NOTES
[1] Defendant, Dependable Life Insurance Company, underwrites Ruby's insurance program, but the program is administered through a trust entity. Variable Protection Administrators, Inc., which investigated plaintiff's claim.

Although Variable was initially named as a defendant in this suit, on Variable's oral motion, it was dismissed at trial. Dependable Life Insurance Company does not dispute that it is legally responsible for the manner in which Variable handled and investigated plaintiff's claim.
[2] It is undisputed that the policy issued to Ruby provided no benefits for examination, treatment or surgery resulting from bodily injury arising out of or in the course of any employment for compensation or profit, or resulting from an accident or disease for which the insured is eligible for coverage under any worker's compensation act.

Plaintiff's trial testimony, however, indicated that Ruby Construction wanted coverage for injuries arising out of employment, but their independent agent had not obtained the desired coverage.
[3] In February, 1985 plaintiff and a friend. Randy Reinerth, purchased an uninhabitable building at 540 St. Ferdinand Street. Permits were then issued to Ruby Construction for the building's renovation and for two weeks in February or March, Ruby performed the major clearing at the house. Additionally, at the date of trial, Ruby had its business address at 540 St. Ferdinand Street.
[4] These claim forms indicated the plaintiff's condition was work related by a check mark being placed in the appropriate box. Identical claim forms, however, dated May 7 and July 1, 1985 left unanswered the question of whether the patient's condition was work related. At trial, the testimony of plaintiff, defendant and Tulane Medical Center billing personnel revealed that no one had knowledge of who had made the check marks. Plaintiff attempted to convey that the claim forms dated June 10 and April 16, 1985 recited the injury was "related to claimant's employment" because of defendant's fraud and trickery.
[5] For trial purposes, plaintiff asserted that he was tricked into issuing the letter of July 11, 1985 by defendant's agents, so that defendant would have a reason to deny his claims. However, the correspondence by plaintiff's counsel written prior to the time this lawsuit was filed indicated plaintiff merely reiterated the term "work related" because plaintiff had heard it used by defendant's agents without understanding the legal significance of that term. Regardless, plaintiff's claim had been denied prior to the date of the letter.
[6] LSA-R.S. 23:1035 provides in pertinent part:

The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his own trade, business, or occupation, or in the course of his own trade, business, or occupation, or in the course of his employer's trade, business, or occupation, except that the bona fide president, vice president, secretary, treasurer of a corporation who owns not less than ten percent of the stock therein, or a partner with respect to a partnership employing him, or a sole proprietor with respect to such sole proprietorship may by written agreement elect not to be covered by the provisions of this Chapter ... (emphasis added)
Consequently, even though Ruby Construction Company is a partnership and not a corporation, the statute referred to in defendant's letter applied to both corporate executives and partners in partnerships.
[7] See footnote 1.
[8] To appeal a denied claim, there is no required form. Instead, the claimant himself must submit a letter to Dependable setting forth all pertinent facts surrounding the claim.
[9] The text of this letter reads as follows:

"As I mentioned in our conversation, there are several factual inconsistencies which prevent favorable consideration of Mr. Rippon's claim at this time. Particularly, in all the claim forms, Mr. Rippon lists his address as 927 St. Ferdinand Street, that being both his individual address and his business address. At the time of the accident, I understand he was working at 540 St. Ferdinand Street. What is the relationship between the two addresses? Which is his personal residence and which is his business residence?
Further, I am certain that you have a copy of Mr. Rippon's letter of July 11, 1985 to Mr. Ed Bentz. In that letter, Mr. Rippon states his accident was work related. Under R.S. 23:1035, he is eligible for worker's compensation even though he is the owner of the company.
My client requests a letter signed by Mr. Rippon himself in which he sets forth in full and accurate detail the facts concerning his accident. He should indicate the date, time and place of the accident, whether the location of the accident was his personal residence or not, whether his company received any renumeration for his services and the like. My client indicates to me that such a letter would assist in leading the company to a favorable review of Mr. Rippon's claim ..."
[10] The itemized damages claimed $22,000.00 for unpaid medical bills; $22,000.00 for statutory penalties under LSA-R.S. 22:657; $50,000.00 for emotional distress resulting from the breach of contract; and $10,000.00 for attorney's fees.
[11] On Motion for Directed Verdict, Variable Protection Administrators, Inc., was dismissed with prejudice, as Variable is not an insurer and LSA-R.S. 22:657 is only applicable to insurers.
[12] LSA-R.S. 22:657 provides in pertinent part: Payments of claims; health and accident policies; penalties A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court ...